UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ARIEL DAN BARKAI,

                              Plaintiff,

        v.

DETECTIVE ROBERT NEUENDORF, *et al.*,

                              Defendants.

No. 21-CV-4060 (KMK)

<u>OPINION & ORDER</u>

---

<u>Appearances:</u>

Ariel D. Barkai
Weston, FL
*Pro Se Plaintiff*

Darius P. Chafizadeh, Esq.
Mathew T. Dudley, Esq.
Harris Beach PLLC
White Plains, NY
*Counsel for Defendants Robert Neuendorf, John Leonard, Unnamed Jane/John Doe Employees, Rockland County District Attorney's Office*

John M. Flannery, Esq.
Eliza M. Scheibel, Esq.
Wilson Elser Moskowitz Edelman & Dicker LLP
White Plains, NY
*Counsel for Defendants Anthony Culianos, Detective Donegan, and Jeff Wanamaker*

John J. Walsh, II, Esq.
Michael K. Burke, Esq.
Paul E. Svensson, Esq.
Hodges Walsh & Burke, LLP
White Plains, NY
*Counsel for Defendants Donald Butterworth, Anthony Palazolo, Dany Ryan, and Ben Gorcynzski*

KENNETH M. KARAS, United States District Judge:

Plaintiff Ariel Dan Barkai ("Plaintiff"), proceeding pro se, brings this Action against Rockland County District Attorney's Office ("RCDAO") Detective Robert Neuendorf ("Neuendorf"), Rockland County Sheriff's Department ("RCSD") Deputy John Leonard ("Leonard"), two Jane/John Doe employees of the RCDAO ("RCDAO Does"; collectively with Neuendorf and Leonard, "Rockland Defendants"), Clarkstown Police Department ("CPD") Police Officer ("PO") Anthony Culianos ("Culianos"), CPD Detective Donegan ("Donegan"), CPD Captain Jeff Wanamaker ("Wanamaker"; collectively with Culianos and Donegan, "Clarkstown Defendants"), Orangetown Police Department ("OPD") Chief of Police Donald Butterworth ("Butterworth"), OPD Detective Sergeant Anthony Palazolo ("Palazolo"), OPD Detective Dan Ryan ("Ryan"), and OPD Officer Ben Gorcynzski ("Gorcynzski"; collectively with OPD, Butterworth, Palazolo, and Ryan, "Orangetown Defendants"), alleging various federal and state law claims against Defendants. (*See generally* Fourth Am. Compl. ("FAC") (Dkt. No. 212).)   Before the Court are three motions to dismiss: (1) the Rockland Defendants' Motion to Dismiss; (2) Defendant Wanamaker's Motion to Dismiss; and (3) the Orangetown Defendants' Motion to Dismiss. (*See* Defs.' Not. of Mot. ("Rockland Not. of Mot.") (Dkt. No. 227); Def.'s Not. of Mot. ("Wanamaker Not. of Mot.") (Dkt. No. 232); Defs.' Not. of Mot. ("Orangetown Not. of Mot.") (Dkt. No. 235).)   For the foregoing reasons, the Motions are granted.

## I. Background

A full factual and procedural history of the Action is recounted in the Court's March 29, 2023 Opinion & Order ("Prior Opinion"), (*see* Prior Op. 4–20 (Dkt. No. 189)), and therefore, what follows is an abbreviated account of the relevant facts and procedural history.[1]

### A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaints and associated filings, all of which are assumed to be true for the purpose of resolving the instant Motion. *See Div. 1181 Amalgamated Transit Union-N.Y. Emps. Pension Fund v. N.Y.C. Dep't of Educ.*, 9 F.4th 91, 94 (2d Cir. 2021) (per curiam).[2]

#### 1. February 18, 2020 Complaint

On January 27, 2020, Plaintiff's mother passed away at Montefiore Nyack Hospital ("MNH"). (*See* FAC ¶ 22.) Several days after his mother's death, Plaintiff went to MNH to obtain his mother's medical records. (*See id.* ¶ 23.) Plaintiff alleges that at the hospital he spoke with MNH Head of Patient Services Kristin DeLorenzo ("DeLorenzo"), who offered to

---

[1] The Prior Opinion may also be found at *Barkai v. Nuendorf*, No. 21-CV-4060, 2023 WL 2691712 (S.D.N.Y. Mar. 29, 2023).

[2] When reviewing a complaint submitted by a pro se plaintiff, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint," *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu v. Rhea*, No. 09-CV-4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010) (italics omitted), statements by the plaintiff "submitted in response to [a defendant's] request for a pre-motion conference," *Jones v. Fed. Bureau of Prisons*, No. 11-CV-4733, 2013 WL 5300721, at *2 (E.D.N.Y. Sept. 19, 2013), "documents either in [the plaintiff's] possession or of which [the] plaintiff[] had knowledge and relied on in bringing suit," *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quotation marks omitted), and "[plaintiff's] opposition memorandum," *Gadson v. Goord*, No. 96-CV-7544, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997). Accordingly, here, the Court will consider the additional submissions by Plaintiff to the extent they are consistent with the allegations in the FAC.

investigate his complaints related to his mother's death.  (*See id.*)  Plaintiff claims he spoke to

DeLorenzo in the presence of Jim Hastings ("Hastings"), head of security at MNH.  (*See id.*)

After the end of the conversation, Hastings and DeLorenzo walked Plaintiff to the exit and

DeLorenzo gave Plaintiff her email.  (*See id.*)  Plaintiff states that over the next two weeks he

sent DeLorenzo eleven emails and spoke with her twice on a conference call.  (*See id.* ¶ 24.)

On February 18, 2020, DeLorenzo filed a complaint, with Gorcynzski, against Plaintiff

including a sworn accusation that he was harassing her with emails.  (*See id.* ¶ 25.)  Gorcynzski

sent the complaint to the Nyack Justice Court.  (*See id.* ¶ 26.)

On April 8, 2020, Ryan served Plaintiff with the charges as filed by the RCDAO and a

restraining order issued by the court.  (*See id.* ¶ 29.)  Plaintiff complained to Ryan, however

Ryan refused to intervene.  (*See id.* ¶ 30.)  Plaintiff escalated the matter to Palazolo who

arranged a meeting between Plaintiff and Butterworth some time in June 2020.  (*See id.*)

Butterworth reviewed the emails and told Plaintiff that MNH never told the police the matter

involved the death of plaintiff's mother.  (*See id.* ¶ 31.)  Butterworth said he would recommend

that the district attorney drop the case. (*See id.* ¶ 30.)  The RCDAO dropped the case two months

later.  (*See id.*)  After the charges were dropped, Plaintiff wanted the police to bring charges

against DeLorenzo and MNH Nurse Tom Nguyen ("Nguyen") for making false statements under

oath.  (*See id.* ¶ 33.)  The police investigated but refused to recommend that charges be brought.

(*See id.*)

### 2.  August 31, 2020 Incident

Plaintiff alleges that on August 31, 2020, he called the RCDAO to speak to Neuendorf.

(*See id.* ¶ 43.)  During this call, Plaintiff spoke with a secretary at the RCDAO and left a

message for Neuendorf regarding an issue related to Plaintiff's EZ pass.  (*See id.* ¶¶ 43–47.)

After Plaintiff's call to RCDAO, Neuendorf called the CPD and spoke to a CPD dispatcher.  (*See id.* ¶ 51.)  Neuendorf told the dispatcher that Plaintiff had made suicidal threats during a call to the RCDAO and requested that police conduct a welfare check of Plaintiff.  (*See id.*)  Plaintiff alleged that he never made any statements threatening harm to himself or others, and that Neuendorf lied when he told the CPD dispatcher that Plaintiff "sounded depressed and was being suicidal."  (*See id.* ¶ 58.)

Donegan and Culianos responded to Plaintiff's home, and ultimately took him to MNH pursuant to New York Mental Hygiene Law ("NYMHL") § 9.41.  (*See id.* ¶¶ 67, 74, 78–80.)  MNH admitted Plaintiff and he was held for four days.  (*See id.* ¶ 82.)

### 3.  August 24, 2021 Incident

Plaintiff alleges he had a telephone conversation with Detective Alexandre Ramirez ("Ramirez") from the New York State Attorney General's Office ("NYSAG") on the morning of August 24, 2021.  (*See id.* ¶¶ 88–89.)  Plaintiff alleges that during his telephone conversation with Ramirez, Plaintiff had an exchange with Ramirez that gave Ramirez some pause.  (*See id.* ¶ 89.)  Plaintiff told Ramirez, among other things, something to the effect of: "if I went to Gaza and indoctrinated myself into suicide bombing and walked into the district attorneys [sic] office and blew myself up nobody could blame me but I will not do that.  I will not do that."  (*Id.* ¶ 94.)

At approximately 11:20AM, following Ramirez's call with Plaintiff, Ramirez sent an email to his superiors at the NYSAG's office memorializing his call with Plaintiff.  (*See* Declaration of Darius P. Chafizadeh in Supp. of Rockland Defendants' Mot. To Dismiss ("Chafizadeh Decl.") (Dkt. No. 228) Ex. H (8/24/21 Email Thread).)  Ramirez wrote in his email to his superiors, among other things, that "[w]ithout mincing words, [Plaintiff] is an EDP [Emotionally Disturbed Person]."  (*Id.* at 2.)

5

Assistant Chief Mario Rivera ("Rivera"), forwarded Ramirez's email to another individual, asking him to assign a detective to follow up with CPD and "make them aware of the threat." (*Id.*) After a series of email forwards, (*see id.* at 1–2), the email finally reached RCSD Captain DeColyse ("DeColyse"), (*see id.* at 1).

Plaintiff alleges that, on August 24, 2021, he had a telephone conversation with DeColyse during which Plaintiff told DeColyse that Plaintiff never threatened anyone (during his telephone call with Ramirez earlier that morning), and that he possessed an audio recording of his telephone call with Ramirez that he claimed proved that he had not threatened anyone. (*See* FAC ¶¶ 99, 102.)

Plaintiff further contends that someone at the RCDAO told RCSD Detective John Scanlon ("Scanlon") that Plaintiff was on his way to the RCDAO "to shoot the place up." (*See id.* ¶¶ 104, 121.) Plaintiff alleges that the RCSD arrested him later that day. (*See id.* ¶ 103.) Plaintiff claims that the RCSD ignored the clearly exculpatory evidence of the audio recording of Plaintiff's telephone call with Ramirez, of which Plaintiff claims DeColyse and Leonard were plainly aware. (*See id.* ¶¶ 100–102, 120.)

Plaintiff alleges that, on October 27, 2021, the Westchester County District Attorney's Office dismissed the criminal complaint against Plaintiff. (*See id.* ¶ 97; Prior Opinion at 17.)

B. Procedural History

On March 29, 2023, the Court issued the Prior Opinion, which granted the Rockland Defendants' Motion To Dismiss Plaintiff's Second Amended Complaint in its entirety as against them and granted in part and denied in part the Clarkstown Defendants' Motion To Dismiss. (*See* Prior Opinion at 3, 82–83.) The Prior Opinion gave Plaintiff thirty days to file an amended

complaint addressing the deficiencies identified therein.  (*See id.* at 82.)  Plaintiff subsequently filed the FAC on June 8, 2023.  (*See generally* FAC.)[3]

On June 21, 2023, the Rockland Defendants and the Orangetown Defendants each filed a pre-motion letter in anticipation of filing a motion to dismiss.  (*See* Dkt. Nos. 214–15.)  On June 27, 2023, the Defendant Wanamaker also filed a pre-motion letter in anticipation of filing a motion to dismiss.  (*See* Dkt. No. 219.)  After receiving letters from Plaintiff on June 27, 2023, (*see* Dkt. No. 220), and on June 28, 2023, (*see* Dkt. No. 221), the Court set a briefing schedule in lieu of holding a pre-motion conference, (*see* Dkt. No. 223).

On July 21, 2023, the Rockland Defendants filed their instant Motion.  (*See* Rockland Not. of Mot.; Chafizadeh Decl.; Mem. of Law in Supp. of Rockland Defendants' Mot. to Dismiss ("Rockland Mem.") (Dkt. No. 229).)  Wanamaker filed his Motion to Dismiss on August 4, 2023.  (*See* Wanamaker Not. of Mot.; Declaration of Eliza M. Scheibel in Supp. of Defendant Wanamaker's Mot. to Dismiss ("Scheibel Decl.") (Dkt. No. 233); Mem. of Law in Supp. of Wanamaker's Mot. to Dismiss ("Wanamaker Mem.") (Dkt. No. 234).)  On the same day, the Orangetown Defendants filed their Motion.  (*See* Orangetown Not. of Mot.; Declaration of Paul E. Svensson in Supp. of Orangetown Defendants' Mot. to Dismiss ("Svensson Decl.") (Dkt. No. 236); Mem. of Law in Supp. of Orangetown Defendants' Mot. to Dismiss ("Orangetown Mem.") (Dkt. No. 237).)

Plaintiff filed an Opposition to each of the Motions to Dismiss on September 11, 2023.  (*See* Mem. of Law in Opp. to Rockland Defendants' Mot. to Dismiss ("Rockland Opp.") (Dkt.

---

[3] Plaintiff filed a Third Amended Complaint on May 12, 2023, (*see* Dkt. No. 199), however, after the Parties appeared at a conference on May 31, 2023 to discuss potential motions to dismiss the Third Amended Complaint, the Court granted Plaintiff leave to file the FAC.  (*See* Dkt. (minute entry dated May 31, 2023).)

No. 254); Mem. of Law in Opp. to Wanamaker's Mot. to Dismiss ("Wanamaker Opp.") (Dkt.

No. 253); Mem. of Law in Opp. to of Orangetown Defendants' Mot. to Dismiss ("Orangetown

Opp.") (Dkt. No. 252).)  The Orangetown Defendants filed their Reply on September 18, 2023.

(*See* Reply Mem. of Law in Further Supp. of Orangetown Defendants' Mot. to Dismiss

("Orangetown Reply") (Dkt. No. 255).)  On October 3, 2023, Wanamaker filed his Reply.  (*See*

Reply Mem. of Law in Further Supp. of Wanamaker's Mot. to Dismiss ("Wanamaker Reply")

(Dkt. No. 259).)  On the same day, the Rockland Defendants filed their Reply.  (*See* Reply Mem.

of Law in Further Supp. of Rockland Defendants' Mot. to Dismiss ("Rockland Reply") (Dkt. No.

261).)

      After seeking leave from the Court, (*see* Dkt. No. 260), Plaintiff filed a Sur-Reply in

response to each Reply, (*see* Sur-Reply Mem. of Law in Further Opp. to Rockland Defendants'

Mot. to Dismiss ("Rockland Sur-Reply") (Dkt. No. 268); Sur-Reply Mem. of Law in Further

Opp. to Wanamaker's Mot. to Dismiss ("Wanamaker Sur-Reply") (Dkt. No. 267); Sur-Reply

Mem. of Law in Further Opp. to Orangetown Defendants' Mot. to Dismiss ("Orangetown Sur-

Reply") (Dkt. No. 266)).

## II.  Discussion

### A.  Standard of Review

      The Supreme Court has held that while a complaint "does not need detailed factual

allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

(alteration adopted) (internal quotation marks and citation omitted).  Indeed, Rule 8 of the

Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-

harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Id.* (alteration adopted) (internal quotation marks and citation omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570. However, if a plaintiff has not "nudged [his] claim[ ] across the line from conceivable to plausible, the[ ] complaint must be dismissed." *Id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" (alteration adopted) (internal quotation marks and citation omitted) (quoting Fed. R. Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

"[W]hen ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and "draw[] all reasonable inferences in favor of the plaintiff," *Daniel v. T&M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Additionally, "[i]n adjudicating a Rule 12(b)(6) motion, a

district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (internal quotation marks and citation omitted); *see also Wang v. Palmisano*, 157 F. Supp. 3d 306, 317 (S.D.N.Y. 2016) (same).  But when a plaintiff proceeds pro se, the Court may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah*, 2013 WL 3972514, at *4 n.3 (internal quotation marks and citation omitted), including "documents that a pro se litigant attaches to his opposition papers," *Agu*, 2010 WL 5186839, at *4 n.6 (italics omitted).  Moreover, where, as here, a plaintiff proceeds pro se, the Court must "construe[] [his] [complaint] liberally and interpret[] [it] to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (internal quotation marks and citation omitted).  Notwithstanding a standard of review comparatively more lenient and favorable to pro se litigants, such treatment "does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (internal quotation marks and citation omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics omitted) (internal quotation marks and citation omitted)).

B.  Analysis

Plaintiff asserts several federal and state law claims arising from the events described above.  (*See generally* FAC.)  The Court begins by reviewing the claims that Plaintiff realleges, which were dismissed in the Court's Prior Opinion; thereafter, the Court reviews newly alleged causes of action, as well as the arguments related thereto raised by the Parties.

1.  Law of the Case Doctrine

The Rockland Defendants and Defendant Wanamaker argue that certain of Plaintiff's claims should be dismissed because Plaintiff's FAC realleges many of the same claims against the same Defendants that the Court previously dismissed in its Prior Opinion, without adding any further factual allegations that would cure the substantive deficiencies that are fatal to those claims.  (*See* Rockland Mem. at 1–2, 4–13; Wanamaker Mem. at 8–10.)  The Court agrees.

"Under the law of the case doctrine, a decision on an issue of law becomes binding precedent in subsequent stages of the same litigation." *Funches v. Miller*, No. 20-CV-676, 2023 WL 2864818, at *2 (N.D.N.Y. Jan. 3, 2023) (quoting *Brentwood Pain & Rehab. Servs., P.C. v. Allstate Ins. Co.*, 508 F. Supp. 2d 278, 288 (S.D.N.Y. 2007)), *report and recommendation adopted*, 2023 WL 2495832 (N.D.N.Y. Mar. 14, 2023); *see also United States v. Plugh*, 648 F.3d 118, 123 (2d Cir. 2011) (explaining that "[a]s a general matter . . . [a court should] adhere to its own decision at an earlier stage of the litigation" (internal quotation marks and citation omitted)). This doctrine "only forecloses consideration of issues that have already been decided," *Davis-Payne v. Amoia*, No. 09-CV-6325, 2018 WL 11192882, at *1 n.1 (W.D.N.Y. June 21, 2018) (citation omitted), and is "discretionary" such that it "does not limit a court's power to reconsider its own decisions prior to final judgment," *Gordon v. City of New York*, No. 14-CV-6115, 2016 WL 4618969, at *3 (S.D.N.Y. Sept. 2, 2016) (internal quotation marks and citation omitted). "However, a court should be 'loathe to revisit an earlier decision in the absence of extraordinary circumstances,'" *Masciotta v. Clarkstown Cent. Sch. Dist.*, No. 14-CV-7128, 2016 WL 4449660, at *4 (S.D.N.Y. Aug. 23, 2016) (quoting *N. River Ins. Co. v. Phila. Reinsurance Corp.*, 63 F.3d 160, 165 (2d Cir. 1995)); *see also Bergerson v. N.Y. State Off. of Mental Health, Cent. N.Y. Psychiatric Ctr.*, 652 F.3d 277, 288 (2d Cir. 2011) (noting that "there is a strong presumption

11

against amendment of prior orders"), namely "cogent or compelling reasons not to [follow the earlier decision], such as an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error to prevent manifest injustice," *Bellezza v. Holland,* No. 09-CV-8434, 2011 WL 2848141, at *3 (S.D.N.Y. July 12, 2011) (internal quotation marks omitted); *see also Plugh,* 648 F.3d at 123–24 (same).

"However, to the extent that Plaintiff . . . offer[s] new claims or factual allegations that arguably address the deficiencies the Court previously identified, the Court will consider those claims anew." *Weslowski v. Zugibe*, 96 F. Supp. 3d 308, 316 (S.D.N.Y. 2015), *aff'd*, 626 F. App'x 20 (2d Cir. 2015) (summary order); *see also Kregler v. City of New York*, 821 F. Supp. 2d 651, 658 (S.D.N.Y. 2011) (finding law of the case doctrine inapplicable because the plaintiff made new factual allegations and advanced a new central theory of liability); *Bellezza*, 2011 WL 2848141, at *3 ("The law of the case doctrine does not control here, however, as the [a]mended [c]omplaint alleges materially different and more detailed claims than the original [c]omplaint . . . ."); *Snoussi v. Bivona*, No. 05-CV-3133, 2010 WL 3924255, at *6–7 (E.D.N.Y. Feb. 17, 2010) (holding that law of the case doctrine did not apply because "[t]he [c]ourt ha[d] not yet decided [the] claim"), *report and recommendation adopted*, 2010 WL 3924683 (E.D.N.Y. Sept. 29, 2010); *Steinfield v. Marks*, No. 96-CV-552, 1997 WL 563340, at *3 (S.D.N.Y. Sept. 8, 1997) (dismissing only those claims which did not contain new factual allegations as barred by law of the case doctrine); *cf. Pelman ex rel. Pelman v. McDonald's Corp.*, 452 F. Supp. 2d 320, 327 (S.D.N.Y. 2006) (striking portions of an amended complaint that referred to previously dismissed claims under law of the case doctrine).

Here, Plaintiff argues that his previously dismissed claims—including (a) with regard to the Rockland Defendants, the Section 1983 false arrest, First Amendment retaliation, and due

process claims arising from Plaintiff's August 31, 2020 NYMHL § 9.41(a) seizure, and the

Section 1983 false arrest and due process claims arising from Plaintiff's August 24, 2021 arrest;

and (b) with regard to the Clarkstown Defendants, all of the Section 1983 claims—survive this

Motion to Dismiss, notwithstanding the law of the case doctrine, because the Court was incorrect

in dismissing his claims in its previous Opinion.  For example, Plaintiff states that this Court's

previous Opinion "failed to address Plaintiff's core contention," (Rockland Opp. at 6), is "not

supported by the evidentiary facts," (*id.* at 10), "overlook[s] . . . clearly established legal

principles," (*id.* at 11), and "constitutes a clearly erroneous ruling," (*id*. at 3.)  Further, "Plaintiff

prays that this Court will correct the manifestly unjust determination in its previous Opinion."

(*Id.* at 15.)  In making such contentions, Plaintiff does not provide any additional or materially

different allegations concerning the above-referenced dismissed claims to support his belief that

the Court should reevaluate those claims.  Accordingly, Plaintiff's central argument against this

Court applying the law of the case doctrine is tantamount to a disagreement with this Court's

Prior Opinion.  However, as this Court has previously noted, (*see* Dkt. No. 196), disagreeing

with the Court's determination is not a proper basis for reconsideration.  *Fishman v. City of New*

*Rochelle*, No. 19-CV-265, 2023 WL 8483017, at *5 (S.D.N.Y. Nov. 28, 2023) ("[A] party's

fundamental disagreement with a court's legal analysis and conclusions as to a matter fully

considered does not serve as sufficient ground to warrant reconsideration of the court's

decision." (quoting *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 512 (S.D.N.Y. 2009)).

     Contrary to Plaintiff's contentions, because the FAC, as outlined above, is identical to

Plaintiff's prior complaints as it pertains to the above-referenced claims, the law of the case

doctrine counsels against reconsideration of the Court's previous dismissal of those claims.  *See*

*Perkins v. Perez*, No. 17-CV-1341, 2020 WL 248686, at *4 (S.D.N.Y. Jan. 16, 2020) ("Where an

amended complaint 'is in large part identical to a plaintiff's first complaint, the law of the case doctrine counsels against reconsideration of' a court's earlier dismissal." (alterations adopted) (quoting *Weslowski*, 96 F. Supp. 3d at 316)); *see also State Farm Mut. Auto. Ins. Co. v. Mallela*, No. 00-CV-4923, 2002 WL 31946762, at *8 (E.D.N.Y. Nov. 21, 2002) (applying law of the case doctrine where "plaintiff's [c]omplaint [was] very similar to [the] plaintiff's [p]rior [c]omplaint").  The mere filing of an amended complaint, repleading these claims, does not entitle Plaintiff to relitigate them absent "extraordinary circumstances".  *Weslowski* , 96 F. Supp. 3d at 315–16 (noting that "a court should be loathe to revisit an earlier decision in the absence of extraordinary circumstances" (internal quotation marks and citation omitted)); *see also Ritani, LLC v. Aghjayan*, 970 F. Supp. 2d 232, 263 (S.D.N.Y. 2013) (denying motion for reconsideration because of lack of extraordinary circumstances); *Selah v. N.Y.S. Docs Comm'r*, No. 04-CV-3273, 2006 WL 2051402, at *2 (S.D.N.Y. July 25, 2006) (dismissing amended complaint because the plaintiff failed to make a showing indicating why the court should depart from law of the case).  Plaintiff does not provide any such extraordinary circumstances as to these claims, and therefore, the Court will not reconsider them and instead will dismiss them for the same reasons stated in its Prior Opinion.  *See Castro v. Smith*, No. 16-CV-8147, 2023 WL 9022789, at *6 (S.D.N.Y. Dec. 29, 2023) (holding that the Court will not reconsider its decision, where defendants appeared to simply disagree with the Court's application of the law to the facts and failed to identify any exceptional circumstance warranting reconsideration); *see also Green v. Phillips*, 374 F. App'x 86, 89 (2d Cir. 2010) (summary order) (finding that "[m]ere disagreement with the district court's underlying judgment does not present extraordinary circumstances or extreme hardship" warranting reconsideration); *McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, No. 22-CV-1138, 2023 WL 8440860, at *1 (S.D.N.Y. Oct. 16, 2023) (same).

14

Moreover, these claims are dismissed with prejudice as this is the second time the Court is adjudicating them, and Plaintiff has fixed none of the problems identified by the Court in the Prior Opinion. *See Williams v. Baxter*, No. 22-CV-6117, 2023 WL 5584345, at *3 (W.D.N.Y. Aug. 29, 2023) (holding that "[a]fter being apprised of the deficiencies in his complaint and put on the plainest notice of what was required, [the p]laintiff ha[d] still not alleged any facts that plausibly state[d] a claim for relief" (internal quotation marks and citation omitted)); *see also Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978) (holding that the plaintiff was not entitled to "a third go-around" because he was not "unaware of the deficiencies in his complaint when he first amended it" and was "on the plainest notice of what was required" to avoid dismissal); *Melvin v. County of Westchester*, No. 14-CV-2995, 2016 WL 1254394, at *24 n.19 (S.D.N.Y. Mar. 29, 2016) (granting motion to dismiss with prejudice where the " [p]laintiff ha[d] already had two bites at the apple, and they ha[d] proven fruitless" (alteration adopted) (internal quotation marks and citation omitted)).

### 2.  Remaining Claims

In light of the Court's law of the case doctrine analysis, the following claims in the FAC remain: (a) with regard to the Rockland Defendants, the state law false arrest claims against Neuendorf and Leonard, and harassment, trespass and conspiracy claims against Neuendorf; (b) with regard to the Clarkstown Defendants, the conspiracy claim against Wanamaker; and (c) with regard to the Orangetown Defendants, the intentional infliction of emotional distress ("IIED"), First Amendment retaliation, Fourth Amendment unlawful seizure, due process violations, and violation of New York Public Health Law ("NYPHL") § 2803-c claims.  The Court addresses each set of Defendants, and the respective claims against them, in turn.

### a. Rockland Defendants

Plaintiff brings for the first time in the FAC state law false arrest claims against Neuendorf and Leonard, and harassment, trespass and conspiracy claims against Neuendorf.  The Court addresses each of these claims in turn.

### i. State Law False Arrest

Plaintiff brings a state law false arrest claim against Defendants Neuendorf and Leonard. (*See* FAC ¶¶ 59, 65, 127, 128.)  For the following reasons, the Court finds that such a claim cannot survive.

"A [Section] 1983 false arrest claim is substantially the same as a claim of false arrest under New York law."  *Walker v. Carrozzo*, 664 F. Supp. 3d 490, 505 (S.D.N.Y. 2023).  The Court already determined, in its Prior Opinion, that the Plaintiff failed to adequately plead a Section 1983 false arrest claim and determined above that Plaintiff failed to cure any of the fatal pleading deficiencies in its FAC with regard to such claim.  Accordingly, because Plaintiff failed to plausibly state a Section 1983 false arrest claim, Plaintiff's state-law false arrest claim fails for the same reason.  *See McNamara v. City of New York*, No. 06-CV-5585, 2009 WL 735135, at *6 (S.D.N.Y. Mar. 20, 2009) (holding that "because false arrest brought under [Section] 1983 mirrors state law false arrest, [the p]laintiff's state law false arrest claim against the on-duty officers also fails as a matter of law"); *see also Walker v. County of Nassau*, No. 19-CV-1374, 2022 WL 19402515, at *9 (E.D.N.Y. Dec. 12, 2022) (holding that because "the factors for assessing the claims of false arrest . . . are the same for claims brought under federal or state law" the court would adopt "its prior determination" as to the Section 1983 false arrest claim and apply it to the state-law false arrest claim), *report and recommendation adopted*, 2023 WL 2624347 (E.D.N.Y. Mar. 24, 2023); *Kilburn v. Village of Saranac Lake*, No. 08-CV-367, 2010

WL 1235576, at *3 (N.D.N.Y. Mar. 31, 2010) (analyzing plaintiff's Section 1983 false arrest claim and state-law false arrest claim simultaneously because "[t]he elements of the state and federal claims are substantially the same"), *aff'd*, 413 F. App'x 362 (2d Cir. 2011) (summary order).

Therefore, Plaintiff's state law false arrest claim is dismissed as against Neuendorf and Leonard.

### ii.  State Law Harassment

Plaintiff also alleged a state law harassment claim against Neuendorf in his FAC.  (*See* FAC ¶¶ 48, 57, 58, 126.)  However, Plaintiff appears to have abandoned this claim, as Plaintiff does not address it at all in his Opposition or Sur-Reply.  *See Romain v. State Farm Fire & Cas. Co.*, 639 F. Supp. 3d 416, 421 n.3 (E.D.N.Y. 2022) (holding that "[p]laintiffs appear to have abandoned their claim . . . as they do not address this claim in their opposition to [d]efendant's [d]ismissal [m]otion"); *see also Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC*, No. 08-CV-442, 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage, where review is limited to the pleadings, a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim."); *Randall v. Dish Net., LLC*, No. 17-CV-5428, 2018 WL 3235543, at *5 (E.D.N.Y. July 2, 2018) ("In light of the plaintiff's failure to address these claims in his opposition papers to this motion, [they] are deemed abandoned.").

In any event, even if Plaintiff opposed the dismissal of this claim, it still fails because "New York law does not recognize a claim for civil harassment."  *Park v. State Farm Mut. Auto. Ins. Co.*, No. 20-CV-1982, 2023 WL 6318278, at *9 (E.D.N.Y. Sept. 5, 2023), *report and recommendation adopted*, 2023 WL 6308086 (E.D.N.Y. Sept. 27, 2023); *New York ex rel. Spitzer v. Cain*, 418 F. Supp. 2d 457, 486 (S.D.N.Y. 2006) ("New York does not recognize a

civil cause of action for harassment." (quoting *Broadway Cent. Prop. Inc. v. 682 Tenant Corp.*, 749 N.Y.S.2d 225, 227 (App. Div. 2002)).

Accordingly, Plaintiff's claim for "harassment" against Neuendorf is dismissed.

### iii.  State Law Trespass

Plaintiff also alleges that Neuendorf trespassed on to Plaintiff's private property.  (*See* FAC ¶¶ 129.)  Like his claim for "harassment," Plaintiff also appears to have abandoned his state law trespass claim against Neuendorf, as he fails to address it in either his Opposition or Sur-Reply.  *See Romain*, 639 F. Supp. 3d at 421 n.3; *see also McCluskey v. Nunziata*, No. 21-CV-4483, 2023 WL 9425408, at *9 (E.D.N.Y. Dec. 14, 2023) (dismissing pro se plaintiff's claim, where the court found, inter alia, that plaintiff abandoned his claim by failing to respond to defendants' argument), *report and recommendation adopted*, 2024 WL 328868 (E.D.N.Y. Jan. 29, 2024); *Robinson v. Fischer*, No. 09-CV-8882, 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) ("Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim.").

However, assuming arguendo that Plaintiff countered the claim, it still does not withstand scrutiny because Plaintiff fails to adequately plead a trespass claim.  "Under New York law, trespass is the intentional invasion of another's property."  *Kaplan v. County of Orange*, 528 F. Supp. 3d 141, 171 (S.D.N.Y. 2021) (quoting *Scribner v. Summers*, 84 F.3d 554, 557 (2d Cir. 1996)).  "The requisite elements for a claim of trespass are the intentional entry by defendants on to plaintiffs' land and the wrongful use without justification or consent."  *Josie v. City of New York*, No. 21-CV-2486, 2023 WL 3765063, at *15 (E.D.N.Y. June 1, 2023) (quoting *Matthews v. Malkus*, 377 F. Supp. 2d 350, 359 (S.D.N.Y. 2005) (discussing New York law)).  "[A] law

enforcement officer is privileged to enter upon premises . . . to execute an arrest warrant in the home of the person to be arrested" but "New York cases support the proposition that a law enforcement officer's privilege remains limited to constitutional searches and seizures." *Id.* (quoting *Voskerchian v. United States*, No. 98-CV-335, 1999 WL 66709, at *4 (W.D.N.Y. Feb. 10, 1999)). Here, the trespass claim fails against Neuendorf, because Plaintiff does not allege that Neuendorf entered Plaintiff's property on August 31, 2020, which is a required element for a trespass claim. *See id.*; *see also Matthews*, 377 F. Supp. 2d at 359 (holding that trespass claim could not lie against defendants that did not enter property).

Thus, the Court dismisses Plaintiff's trespass claim.

### iv. Conspiracy

Plaintiff next asserts a conspiracy claim against Neuendorf. (*See* FAC ¶¶ 54, 57.) "To prove a Section 1983 conspiracy, a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Forte v. City of New York*, No. 16-CV-560, 2023 WL 6259652, at *10 (S.D.N.Y. Sept. 26, 2023) (quoting *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999)). "Although a plaintiff is not required to list the place and date of defendants' meetings and the summary of their conversations when he pleads conspiracy, the pleadings must present facts tending to show agreement and concerted action." *Dubose v. Jimenez*, No. 22-CV-2124, 2023 WL 5237639, at *16 (S.D.N.Y. Aug. 15, 2023) (alteration adopted) (quoting *Concepcion v. City of New York*, No. 05-CV-8501, 2008 WL 2020363, at *3 (S.D.N.Y. May 7, 2008)). "Conclusory allegations of a [Section] 1983 conspiracy are insufficient." *Id.* (alteration adopted) (quoting *Pangburn*, 200 F.3d at 72). Moreover, a plaintiff "must also allege the 'actual deprivation of constitutional

rights.'" *Arriaga v. Otaiza*, No. 20-CV-6992, 2021 WL 5449849, at *10 (S.D.N.Y. Nov. 19, 2021) (quoting *Romer v. Morgenthau*, 119 F. Supp. 2d 346, 363–64 (S.D.N.Y. 2000)). "[I]n the absence of an underlying constitutional violation, a plaintiff 'cannot sustain a claim of conspiracy to violate those rights.'" *Publicola v. Lomenzo*, No. 21-CV-1303, 2022 WL 1027099, at *18 (N.D.N.Y. Apr. 5, 2022) (quoting *Romer*, 119 F. Supp. 2d at 363).

Here, as noted above, Plaintiff has failed to plausibly allege a constitutional violation against Neuendorf. Thus, any conspiracy claim alleged by Plaintiff against Neuendorf in connection with the dismissed constitutional claims against him cannot survive. *See id.* ("Because plaintiff has failed to plausibly allege constitutional claims, any claim based on a conspiracy to violate those rights must fail."); *Arriaga*, 2021 WL 5449849, at *10 ("Plaintiff has failed to allege plausibly a violation of his First, Eighth, and Fourteenth Amendment rights. Thus, any conspiracy claims alleged by Plaintiff in connection with the dismissed constitutional claims are likewise dismissed.").

Even if Plaintiff had properly alleged an underlying constitutional violation, his claim still fails. All of Plaintiff's allegations regarding purported conspiratorial conduct are conclusory. For example, Plaintiff repeatedly alleges that Neuendorf conspired with Wanamaker to violate his constitutional rights but does not provide any details regarding an agreement entered into between Neuendorf and Wanamaker to violate such rights. (*See* FAC ¶ 54.) Furthermore, insofar as Plaintiff asserts a conspiracy claim based on the fact that Neuendorf called a CPD dispatcher on August 31, 2020, to request a welfare check on Plaintiff, and stated during the call that he was "working with Jeff Wanamaker on this," such a statement is not enough to plausibly suggest participation in an agreement to violate Plaintiff's constitutional rights. *See Webb v. Goord*, 340 F.3d 105, 110 (2d Cir. 2013) (recognizing that a plaintiff

alleging a conspiracy "must provide some factual basis supporting a meeting of the minds, such that defendants entered into an agreement, express or tacit, to achieve the unlawful end" (internal quotation marks and citations omitted)); *Ciambriello v. County of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." (internal quotation marks and citations omitted)).  Other courts have held as much.  For example, in *Jouthe v. City of New York*, 05-CV-1374, 2009 WL 701110 (E.D.N.Y. Mar. 10, 2009), the plaintiffs alleged that the defendants conspired to deprive plaintiff Jouthe of his constitutional rights.  *Id.* at *16.  Specifically, the plaintiffs argued that defendants wanted plaintiff Jouthe arrested and that the officers "*worked together* for this to happen."  *Id.* (emphasis added) (internal quotation marks and citations omitted).  The Court held that even though defendants made statements to an officer that they wanted to press charges against plaintiff Jouthe, and the officer arrested plaintiff, such evidence was insufficient to hold that defendants agreed among themselves to inflict an unconstitutional injury on plaintiff Jouthe. *Id.* (citing *Nat'l Cong. For Puerto Rican Rights v. City of New York*, 75 F. Supp. 2d 154, 168 (E.D.N.Y. 1999) (dismissing conspiracy claim for failure to allege a meeting of the minds)).  In other words, a mere allegation that two people worked together is insufficient to allege an agreement to violate another's constitutional rights.

Like in *Jouthe*, without more specific allegations, Plaintiff's statements are insufficient to raise a cognizable conspiracy claim.  *See Walker v. Capra*, No. 22-CV-7638, 2024 WL 21938, at *11 (S.D.N.Y. Jan. 2, 2024) (holding that pro se plaintiff failed to state a conspiracy claim, where he "allege[d] all of the defendants conspired in one way or another with someone else,"

but did not provide "further factual supporting allegations of what actions such defendants took in furtherance of the conspiracy"); *Jackson v. Nassau County*, 552 F. Supp. 3d 350, 382–83 (E.D.N.Y. 2021) (holding that the plaintiff failed to make out a claim for conspiracy, where complaint alleged no overt acts which were reasonably related to promotion of alleged conspiracy, such as contact or coordination between village and county defendants, and complaint failed to allege facts from which meeting of minds could be inferred); *Sharp v. Town of Greece*, No. 09-CV-6452, 2010 WL 1816639, at *7 (W.D.N.Y. May 3, 2010) (finding allegation that defendant "took action pursuant to an agreement" insufficient to make out a conspiracy claim); *Warren v. Fischl*, 33 F. Supp. 2d 171, 177–78 (E.D.N.Y. 1999) (finding insufficient pro se plaintiff's allegation of conspiracy despite his specific claims of conspiracy to alter tapes and create illegal search warrants, where there was no basis for the assertion that defendants actually conspired together to bring about these actions); *Hickey-McAllister v. Brit. Airways*, 978 F. Supp. 133, 139 (E.D.N.Y. 1997) ("Because plaintiff has alleged no facts at all from which a meeting of the minds between [defendants] on a course of action intended to deprive plaintiff of her constitutional rights can be inferred, her allegations are insufficient to survive a motion for dismissal.").

Therefore, Plaintiff's Section 1983 conspiracy claim is dismissed.

### b.  Clarkstown Defendant Wanamaker

Plaintiff, also for the first time in the FAC, alleges a Section 1983 conspiracy claim against Wanamaker.  (*See* FAC ¶¶ 54, 57.)  Plaintiff's claim fails against Wanamaker for the same reasons the conspiracy claim fails against Neuendorf.  *See supra* Section II.B.2.a.iv.  As an initial matter, Plaintiff fails to allege a requisite underlying constitutional violation.  *See Forte*, 2023 WL 6259652, at *10 ("[W]here a plaintiff fails to plead a constitutional violation, a

conspiracy claim . . . must fail as well."). Even if Plaintiff had alleged an underlying constitutional violation, the FAC fails to provide anything but vague and conclusory allegations about Wanamaker's involvement in a conspiracy to violate Plaintiff's rights. *See Bradshaw v. Annucci*, No. 23-CV-602, 2023 WL 4744735, at *26 (N.D.N.Y. July 24, 2023) ("Vague and conclusory allegations that defendants have engaged in a conspiracy must be dismissed."); *see also Sommer v. Dixon*, 709 F.2d 173, 175 (2d Cir. 1983) ("A complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional rights cannot withstand a motion to dismiss.").

Accordingly, the Section 1983 conspiracy claim against Wanamaker is dismissed.

### c. Orangetown Defendants

The Plaintiff also makes various allegations in the FAC against the Orangetown Defendants for the first time. These allegations include claims for: IIED, First Amendment retaliation, Fourth Amendment unlawful seizure, due process violations, and violation of NYPHL § 2803-c. The Court addresses each of these claims in turn.

### i. IIED

Plaintiff alleges that the Orangetown Defendants intentionally inflicted emotional distress by advancing charges against him related to his communications with MNH and failing to mitigate his injuries arising from the charges. (*See* FAC ¶ 35.) The Orangetown Defendants argue that the Court should dismiss the claim because it is untimely, and Plaintiff fails to plausibly state an IIED claim. (*See* Orangetown Mem. at 2–6.) For the following reasons, the Court concludes that Plaintiff's claim is timely, however, Plaintiff fails to adequately state an IIED claim.

(a)  Timeliness

"Section 215(3) of New York's [Civil Practice Law and Rules] imposes a one-year

statute of limitations on claims of [IIED], and the limitations period begins to run on the date of

injury." *Corrigan v. Town of Brookhaven*, No. 22-CV-4688, 2023 WL 7003936, at *2 (E.D.N.Y.

Oct. 24, 2023) (quoting *Romeo v. Aid to the Developmentally Disabled, Inc.*, No. 11-CV-6340,

2013 WL 1209098, at *7 (E.D.N.Y. Mar. 22, 2013).

Based on Plaintiff's allegations, the Plaintiff's injury occurred sometime between April

and August 2020.  On April 8, 2020, Plaintiff was served with charges related to the emails he

sent DeLorenzo at MNH.  (*See* FAC ¶ 29.)  In June 2020, Plaintiff met with Butterworth, who

told him that OPD would recommend to the RCDAO that the charges against Plaintiff be

dropped.  (*See id.* ¶ 30.)  Plaintiff claims that the charges were not dropped until two months

later.  (*See id.*)  Plaintiff does not allege that the Orangetown Defendants had any ability to do

anything more than recommend that the charges be dropped, which they did in June 2020.  But

even assuming Plaintiff's injury lasted until the charges were dropped two months later, his

injury accrued sometime in August 2020.

Plaintiff did not bring an IIED claim until almost three years later when he filed the FAC

on June 8, 2023.  Accordingly, based only on the one-year statute of limitations, Plaintiff's claim

would be time-barred.  However, even though the statute of limitations for IIED claims is one

year and accrues on the date of injury, *Corrigan*, 2023 WL 7003936, at *2, under Federal Rule

of Civil Procedure 15(c), "an amended pleading 'relates back to the date of the original pleading

when . . . the claim or defense asserted in the amended pleading arose out of the conduct,

transaction, or occurrence set forth or attempted to be set forth in the original pleading,'"

*Fleming v. Verizon N.Y., Inc.*, 419 F. Supp. 2d 455, 467 (S.D.N.Y. 2005) (quoting Fed. R. Civ. P.

24

15(c)(2)).  Here, "particularly in light of the liberal construction afforded to a pro se plaintiff's pleadings," *Sanders v. Sheppard*, No. 16-CV-6526, 2019 WL 13405420, at *10 (E.D.N.Y. Sept. 30, 2019) (italics omitted), Plaintiff's original Complaint sets forth the same series of facts that form the basis of the claims in his FAC.  (*See generally* Compl. (Dkt. No. 2); *id.* at 9 (noting the "dismissal of [] charges falsely brought against [him] by [MNH], advanced by the [OPD]"); *id.* at 15 (alleging that "[a]s a result of all the trauma I have sustained as a result . . . of being charged . . . I have been in therapy").)  Accordingly, the Court determines that Plaintiff's FAC relates back to his original Complaint, and therefore, his IIED claim against the Orangetown Defendants is timely.  *See Fleming*, 419 F. Supp. 2d at 468 (holding that "[t]he [a]mended [c]omplaint describe[d] the same series of transactions and occurrences alleged in the original pleading," giving defendant fair notice of plaintiff's claims, and therefore, finding that the "[a]mended [c]omplaint relate[d] back for statutes of limitations purposes" (internal quotation marks and citations omitted)).

### (b)  Failure to State a Claim

Even though the Court finds that Plaintiff's IIED claim is timely, the Court holds that Plaintiff fails to adequate plead an IIED claim.

"The state-law tort of [IIED] has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress."  *Ackridge v. Aramark Corr. Food Servs.*, No. 16-CV-6301, 2018 WL 1626175, at *23 (S.D.N.Y. Mar. 30, 2018) (quoting *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996)).  "New York courts have imposed a very high threshold for [IIED] claims, requiring that the conduct must be so outrageous and extreme as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized

community." *Seward v. Antonini*, No. 20-CV-9251, 2023 WL 6387180, at \*33 (S.D.N.Y. Sept. 29, 2023) (quoting *Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 314 (S.D.N.Y. 2005)).

"The Second Circuit has suggested that sufficient . . . outrageous behavior could be 'some combination' of alleged 'public humiliation, . . . verbal abuse or harassment, physical threats, permanent loss of employment, or conduct contrary to public policy' with false accusations of criminal conduct." *Truman v. Brown*, 434 F. Supp. 3d 100, 120 (S.D.N.Y. 2020) (quoting *Stuto v. Fleishman*, 164 F.3d 820, 828–29 (2d Cir. 1999)); *see also Lebowitz v. N.Y.C. Dep't of Educ.*, 407 F. Supp. 3d 158, 180 (E.D.N.Y. 2017) (same).  Alleging sufficiently "outrageous" conduct is thus a very high bar.  *See Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 375 (S.D.N.Y. 2016) ("[E]ven a false charge of sexual harassment does not rise to the level of outrage required under New York law." (internal quotation marks and citation omitted)); *Palmer v. City of New York*, 564 F. Supp. 3d 221, 239 (E.D.N.Y. 2001) (finding IIED claim insufficient even though "the defendant police officers came to [the] plaintiffs' home [to evict the plaintiffs], were shown a copy of the state court's [order staying the eviction order] and bankruptcy court filings, ignored [the] plaintiffs' pleas to stay in their home, arrested [the plaintiff] in front of the neighbors, and 'coerced' [one plaintiff] into telling [the other plaintiff] to leave the home").

Here, Plaintiff bases his IIED claim on the following two circumstances: (1) Gorcynzski spoke to DeLorenzo, took her sworn complaint and forwarded it to the Nyack Justice Court without further investigating, (FAC ¶¶ 25–26); and (2) Butterworth met with Plaintiff and told him that he would recommend dropping the charges, but the charges were not dropped until two

months later, (*id.* ¶ 30).  Such facts fall far short of the conduct required to support an IIED claim.

Specifically, with regard to Gorcynzski's actions, Plaintiff does not provide any allegations or case law to demonstrate that Gorcynzski's lack of further investigation was extreme and outrageous.  Rather, "it is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006) (alteration, internal quotation marks, and citation omitted).  Moreover, the law in the Second Circuit is clear that once a government official has a reasonable basis to believe that there is probable cause to arrest, the official "is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Garcia v. Does*, 779 F.3d 84, 93 (2d Cir. 2015) (internal quotation marks and citation omitted).  Accordingly, Gorcynzski's acceptance of DeLorenzo's, the victim's, sworn complaint without further investigation was not extreme and outrageous conduct, rather it was within the confines of the law.  *See Semencic v. County of Nassau*, No. 18-CV-5244, 2020 WL 435294, at *9 (E.D.N.Y. Jan. 28, 2020) (holding that plaintiff failed to state a claim for IIED because he did not plead extreme and outrageous conduct even where he alleged that the defendants gave false information to the police leading to plaintiff's arrest and prosecution).

As to Butterworth's actions, Plaintiff's complaint seems to be that it took two months from the time that Butterworth told Plaintiff that he would recommend that the DA drop the charges and the charges being dropped.  Setting aside whether such conduct is extreme and outrageous, Plaintiff fails to provide a single factual contention to indicate that Butterworth caused this delay. Specifically, Plaintiff does not plead that Butterworth delayed recommending

that the charges be dropped against Plaintiff, nor does Plaintiff assert that Butterworth had any control over the time it took to drop the charges once Butterworth provided his recommendation. As such, Plaintiff fails to assert "a causal connection between the conduct," Butterworth's recommendation that the charges be dropped, "and [the] injury," any subsequent delay in the charges being dropped, which is a requisite element of an IIED claim. *Seward*, 2023 WL 6387180, at *33 (quoting *Howell v. N.Y. Post Co.*, 612 N.E.2d 699, 702 (N.Y. 1993)).

In short, because Plaintiff fails to allege, with regard to Gorcynzski's actions, extreme and outrageous conduct, and as to Butterworth's conduct, a causal connection between his actions and Plaintiff's alleged injury, the Court dismisses Plaintiff's IIED claim.

## ii.  First Amendment Retaliation

Plaintiff also alleges that the Orangetown Defendants violated his First Amendment right to free speech by advancing charges against him after he made a complaint to MNH regarding the death of his mother.  (*See* FAC ¶¶ 36, 39, 112, 123.)

As an initial matter, Plaintiff does not allege that Defendants Butterworth, Palazolo, or Ryan were involved in advancing the charges against Plaintiff that form the basis of his First Amendment claim.  Instead, Plaintiff alleges that "DeLorenzo contacted OPD where she spoke with [] Gorcynzski and filed a complaint . . . . Gorcynzski took the signed complaint and advanced [it] to Nyack Justice Court without ever reading the underlying emails upon which the complaint was made."  (FAC ¶ 25–26.).  Accordingly, because Plaintiff fails to allege Butterworth, Palazolo, or Ryan's personal involvement, Plaintiff cannot maintain a First Amendment retaliation claim against them.  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) ("It is well settled that, in order to establish a defendant's individual liability in a suit brought under [42 U.S.C.] § 1983, a plaintiff must show . . . the defendant's personal

involvement in the alleged constitutional deprivation."); *see also Leneau v. Ponte*, No. 16-CV-776, 2018 WL 566456, at *15 (S.D.N.Y. Jan. 25, 2018) (dismissing allegations against a defendant for lack of personal involvement, because the "[p]laintiff's general allegation that all defendants were involved in the alleged constitutional violations does not rescue the claims against" a particular defendant); *Davila v. Johnson*, No. 15-CV-2665, 2015 WL 8968357, at *4 (S.D.N.Y. Dec. 15, 2015) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under [Section] 1983." (internal quotation marks and citation omitted)).  Accordingly, Plaintiff's First Amendment retaliation claim is dismissed against Defendants Butterworth, Palazolo, and Ryan.

As for Defendant Gorcynzski, the Court determines for the following reasons that Plaintiff fails to plausibly plead a First Amendment retaliation claim.  A plaintiff asserting a First Amendment retaliation claim must establish that: "(1) [his] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [him]; and (3) there was a causal connection between this adverse action and the protected speech."  *Balchan v. City Sch. Dist. of New Rochelle*, No. 21-CV-4798, 2023 WL 4684653, at *5 (S.D.N.Y. July 21, 2023) (quoting *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015)).

With respect to the first factor, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."  *Burden v. Inc. Vill. of Port Jefferson*, 664 F. Supp. 3d 276, 283 (E.D.N.Y. 2023) (quoting *City of Houston v. Hill*, 482 U.S. 451, 461 (1987)).  Accordingly, "[s]peech directed at police officers will be protected unless it is likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance or unrest."  *Lilly v. Town of Lewiston*, 449 F. Supp. 3d 190, 202 (W.D.N.Y. 2020) (quoting *Kerman v. City of New York*, 261 F.3d 229, 242 (2d Cir. 2001)).

As for the third factor, causality, the retaliatory motive must be a "but-for" cause. *Hartman v. Moore*, 547 U.S. 250, 260 (2006).  In other words, "[i]t is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must cause the injury." *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019).  For this reason, "[t]he presence of probable cause should generally defeat a First Amendment retaliatory arrest claim." *Dougal v. Lewicki*, No. 23-CV-1167, 2023 WL 6430586, at *8 (N.D.N.Y. Oct. 3, 2023) (internal quotation marks and citation omitted), *report and recommendation adopted*, 2023 WL 7013384 (N.D.N.Y. Oct. 25, 2023); *see also Higginbotham v. Sylvester*, 218 F. Supp. 3d 238, 245 (S.D.N.Y. 2016) ("The existence of probable cause, however, will defeat a First Amendment claim 'premised on the allegation that defendants prosecuted a plaintiff out of a retaliatory motive.'" (alteration adopted) (quoting *Fabrikant v. French*, 691 F.3d 193, 215 (2d Cir. 2012))), *aff'd*, 741 F. App'x 28 (2d Cir. 2018) (summary order).

"Probable cause requires an officer to have 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" *McKinley v. Crevatas*, No. 20-CV-3606, 2023 WL 4364182, at *5 (S.D.N.Y. July 6, 2023) (quoting *Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000)).  "Probable cause is judged based on 'an objective basis.'" *Brathwaite v. City of New York*, No. 19-CV-9235, 2023 WL 5713189, at *5 (S.D.N.Y. Sept. 5, 2023) (quoting *Zellner v. Summerlin*, 494 F.3d 344, 369 (2d Cir. 2007)).  In practice, "[w]hether probable cause exists depends upon the reasonable conclusion to be drawn from the facts known to the arresting officer at the time of the arrest." *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004)); *see also Guan v. City of New York*, 37 F.4th 797, 804 (2d Cir. 2022) ("To determine the existence of probable cause, a court considers the totality of the circumstances[] based on a full sense of the evidence

that led the officer to believe that there was probable cause to make an arrest." (internal quotation marks and citation omitted)).

"The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . ." *Delgado v. City of New York*, No. 19-CV-6320, 2023 WL 6390134, at *7 (S.D.N.Y. Oct. 2, 2023) (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). In contrast, "where the question of whether an arresting officer had probable cause is predominantly factual in nature, as where there is a dispute as to the pertinent events, the existence vel non of probable cause is to be decided by the jury." *Murphy v. Lynn*, 118 F.3d 938, 947 (2d Cir. 1997) (italics omitted).

"Probable cause is 'a fluid concept not readily, or even usefully, reduced to a neat set of legal rules. While probable cause requires more than a "mere suspicion" of wrongdoing, its focus is on "probabilities," not "hard certainties."'" *King v. Nesto*, No. 19-CV-1466, 2023 WL 2456701, at *5 (D. Conn. Mar. 10, 2023) (alterations adopted) (quoting *Walczyk v. Rio*, 496 F.3d 139, 156 (2d Cir. 2007)). "Thus, according to the Supreme Court, when courts review a situation frozen in ink and perform ex post facto probable cause analyses with the benefit of near-unlimited time, they are to think about 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Barkai v. Mendez*, 629 F. Supp. 3d 166, 192 (S.D.N.Y. 2022) (quoting *Illinois v. Gates*, 462 U.S. 213, 241 (1983)).

Finally, "probable cause exists even where it is based upon mistaken information, so long as the arresting officer was reasonable in relying on that information." *Aurecchione v. Falco*, No. 22-CV-4538, 2023 WL 6255529, at *10 (S.D.N.Y. Sept. 25, 2023) (quoting *Bernard v. United States*, 25 F.3d 98, 103 (2d Cir. 1994)). As explained above, once a government official has a reasonable basis to believe that there is probable cause to arrest, the official "is not required

to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *Garcia*, 779 F.3d at 93 (internal quotation marks and citation omitted).  "In sum, probable cause does not demand any showing that a good-faith belief be 'correct or [even] more likely true than false.'  It requires only such facts as make wrongdoing or the discovery of evidence thereof probable." *Walczyk*, 496 F.3d at 157 (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

Here, Plaintiff's pleadings establish the Gorcynzski had probable cause to advance the charges against Plaintiff.  Plaintiff states that "DeLorenzo contacted OPD where she spoke with [] Gorcynzski and filed a complaint . . . swearing on an accusatory document that [Plaintiff] sent her [eleven] emails that served no legitimate purpose other than to cause annoyance, alarm or fear and were outside the scope of her professional duties."  (FAC ¶ 25 (internal quotation marks omitted).)  Plaintiff further alleges that "Gorcynzski took the signed complaint and advanced [it] to Nyack Justice Court without ever reading the underlying emails upon which the complaint was made."  (*Id.* ¶ 26.).  As noted previously "[i]t is well-established that a law enforcement official has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the circumstances raise doubt as to the person's veracity." *Panetta*, 460 F.3d at 395  (internal quotation marks and citation omitted); *see also Singer v. Fulton Cnty. Sheriff,* 63 F.3d 110, 119 (2d Cir. 1995) (making clear that, where a police officer is "advised of a crime by a person who claims to be the victim, and who has signed a complaint or information charging someone with the crime," the officer has "probable cause to effect an arrest absent circumstances that raise doubts as to the victim's veracity"); *Harris v. Binghamton Police Dep't*, No. 22-CV-977, 2023 WL 7319090, at *3 (N.D.N.Y. Nov. 7, 2023) (holding that the victim's sworn statement provided probable cause to arrest plaintiff for crime).

Plaintiff provides no specific allegations that would raise any doubts as to the veracity of DeLorenzo's statements.  Instead, Plaintiff asserts that DeLorenzo's complaint "was a blatantly false statement."  However, such a conclusory statement is insufficient because "an arrestee's protestations of innocence" do not "necessarily vitiate probable cause." *United States v. Esters*, No. 21-CR-398, 2022 WL 16715891, at *5 (E.D.N.Y. Nov. 4, 2022) (quoting *Fogelman v. Donato*, 111 F. Supp. 3d 282, 285 (E.D.N.Y. 2015)).

To the extent Plaintiff contends that his First Amendment rights were violated because Gorcynizski did not read the underlying emails and investigate further before advancing the complaint to the Nyack Justice Court, such an argument is unavailing.  "Once a police officer has a reasonable basis to believe that he has probable cause to arrest, the officer 'is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" *Gerasimou v. Cillis*, No. 15-CV-6892, 2022 WL 118748, at *3 (E.D.N.Y. Jan. 12, 2022) (quoting *Garcia*, 779 F.3d at 93).  Here, after receiving DeLorenzo's complaint and sworn statement, Gorcynizski did not need to investigate further before advancing the complaint.  *See Best v. Merch.*, No. 21-CV-779, 2022 WL 17551935, at *4 (S.D.N.Y. Dec. 9, 2022) ("Once officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury, as their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence.  It is therefore of no consequence that a more thorough or more probing investigation might have cast doubt upon the situation." (alteration adopted) (internal quotation marks and citations omitted)); *accord Panetta*, 460 F.3d at 395–96 ("[T]he fact that an innocent explanation may be consistent with the facts alleged . . . does not negate probable cause, and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause.").

Therefore, Plaintiff's First Amendment retaliation claim is also dismissed against Defendant Gorcynzski.

<u>iii.  Fourth Amendment Unlawful Seizure</u>

Plaintiff also brings a Fourth Amendment "unreasonable seizure" claim against the Orangetown Defendants for serving him with the charges and a restraining order issued by the Nyack Justice Court.  (*See* FAC ¶¶ 29–31, 111.)

It is unclear based on Plaintiff's pleadings how such action constituted an "unlawful seizure" under the Fourth Amendment.  Generally, "[a] seizure triggering the Fourth Amendment's protections occurs only when government actors have, by means of physical force or show of authority, in some way restrained the liberty of a citizen." *Kaplan*, 528 F. Supp. 3d at 162 (internal quotation marks and citation omitted).  This happens when, "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *Est. of M.D. by DeCosmo v. New York*, 241 F. Supp. 3d 413, 423 (S.D.N.Y. 2017) (quoting *Kia P. v. McIntyre*, 235 F.3d 749, 762 (2d Cir. 2000)).

Here, Plaintiff has not alleged any form of confinement or physical detention.  Instead, he claims that the charge brought against him pursuant to DeLorenzo's complaint "constituted an unlawful curtail[ment] of [his] liberties and [his] rights enshrined in law and as such was a clear-cut unreasonable seizure."  (FAC ¶ 31.)  Specifically, he alleges that the charge against him was an unlawful seizure because the Orangetown Defendants stated that they "never would have brought the charges" if they knew Plaintiff's actions had to do with the death of his mother. (*Id.*).  Such statements do not allege any form of physical restriction.  In the absence of anything beyond conclusory allegations that Plaintiff was subject to an unlawful seizure, the Court finds that Plaintiff fails to state a claim under the Fourth Amendment.  *See Paul v. Capra*, No. 20-CV-

5154, 2022 WL 992845, at *8 (S.D.N.Y. Mar. 31, 2022) (holding that the plaintiff had failed to state a claim of false imprisonment under the Fourth Amendment as she was not confined); *see also Zimmerman v. Wolczyk*, No. 15-CV-1437, 2016 WL 3702987, at *6 n.11 (N.D.N.Y. July 8, 2016) ("[The] [p]laintiff's conclusory assertion that his confinement constituted an unreasonable seizure . . . does not give rise to a cognizable Fourth Amendment claim against these defendants." (alterations adopted) (internal quotation marks and citation omitted)).

Therefore, Plaintiff's Fourth Amendment claim for unlawful seizure against the Orangetown Defendants is dismissed.

<u>iv.  Due Process</u>

Plaintiff vaguely asserts a due process claim against the Orangetown Defendants rooted in a failure to adequately investigate both DeLorenzo's complaint before charges were brought against Plaintiff and Plaintiff's counter-complaint against DeLorenzo and her colleague at MNH. (*See* FAC ¶¶ 26, 34, 37, 39.)  The Court interprets Plaintiff's references to due process in relation to a failure to investigate as raising a procedural due process claim.  For the following reasons, the Court finds that Plaintiff has not stated a claim upon which relief can be granted.

The Fourteenth Amendment requires that no "[s]tate . . . deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  "The Due Process Clauses generally confer no affirmative right to governmental aid, even where such aid may be necessary to secure life, liberty, or property interests of which the government itself may not deprive the individual."  *Townsley v. Lee*, No. 16-CV-3837, 2017 WL 3025886, at *10 (S.D.N.Y. July 14, 2017) (quoting *DeShaney v. Winnebago Soc. Servs.*, 489 U.S. 189, 196 (1989)).  "A plaintiff who raises a due process claim must plausibly allege (1) that he possessed a liberty interest and

(2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Carota v. James*, No. 22-CV-949, 2023 WL 3788857, at *6 (N.D.N.Y. May 3, 2023) (internal quotation marks and citation omitted).  Courts within the Second Circuit have determined that "there is no constitutional right to an investigation by government officials." *Bright v. Annucci*, No. 18-CV-11111, 2021 WL 4461682, at *16 (S.D.N.Y. Sept. 28, 2021) (alterations adopted) (quoting *Bernstein v. New York*, 591 F. Supp. 2d 448, 460 (S.D.N.Y. 2008); *see also Longi v. County of Suffolk*, No. 02-CV-5821, 2008 WL 858997, at *6 (E.D.N.Y. Mar. 27, 2008) (same); *Nieves v. Gonzalez*, No. 05-CV-17, 2006 WL 758615, at *4 (W.D.N.Y. Mar. 2, 2006) (same).  As such, "there is no constitutional violation when the government refuses to investigate an alleged constitutional violation, much less when it fails to investigate allegations of wrongdoing in a particular manner or to the satisfaction of the victim." *Townsley*, 2017 WL 3025886, at *11; *see also Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) ("[T]he breadth of any investigation remains in the discretion of the officers conducting the investigation.").

Here, Plaintiff's due process claim is based on the Orangetown Defendants' alleged failure to investigate the complaint against him and his counter-complaint.  Specifically, he alleges that "[t]he Orangetown Defendants . . . by failing to investigate from both sides violated my right to due process," (FAC ¶ 37), and that "when [he] asked to press counter charges [the Orangetown Defendants] covered up clearly inculpatory evidence and further lied about material facts in the investigation to deny me due process," (*id.* ¶ 39).  However, as explained above, the law does not recognize a failure to investigate as a due process violation, and therefore, Plaintiff cannot proceed on such a claim.  *See Alan v. U.S. Dep't of Just.*, — F. Supp. 3d — , 2023 WL 6558987, at *3 (W.D.N.Y. Oct. 10, 2023) (dismissing the plaintiff's due process claim related to an alleged failure to conduct an investigation because "there is no constitutional right to an

investigation by government officials.  Thus, there is no constitutional violation where the government refuses to investigate a crime." (alterations adopted) (internal quotation marks and citation omitted)); *Kilcher v. Albany County.*, No. 19-CV-158, 2019 WL 911192, at *4 (N.D.N.Y. Feb. 25, 2019) ("Because plaintiff has no constitutional right to an investigation, this claim against defendant . . . fails."), *report and recommendation adopted*, 2019 WL 1516933 (N.D.N.Y. Apr. 8, 2019).

Accordingly, plaintiff fails to state a due process claim against the Orangetown Defendants.

<u>v.  N.Y. Public Health Law Section 2803-c</u>

Finally, Plaintiff alleges that by bringing charges against him for making a lawful complaint to MNH regarding his mother's death, the Orangetown Defendants violated his rights under NYPHL § 2803-c.  (*See* FAC ¶¶ 36, 123.).

As an initial matter, the Orangetown Defendants did not bring charges against Plaintiff. Rather, Gorcynzski took DeLorenzo's sworn complaint and forwarded that complaint to the Nyack Justice Court, (FAC ¶¶ 25–26), and Ryan served Plaintiff with the charges, (*id.* ¶ 30).  It was RCDAO that brought the charges against Plaintiff.  (*See id.* ¶ 29.)  As for Palazolo and Butterworth, they met with Plaintiff, some months later in June 2020, and told him that they would recommend dropping the charges, (*id.* ¶ 30), and RCDAO dropped the charges two months later.  But assuming arguendo that Plaintiff alleges that the Orangetown Defendants violated Plaintiff's rights under Section 2803-c by simply advancing DeLorenzo's complaint, Plaintiff's claim does not fare any better.

"NYPHL § 2803-c enumerates the rights of patients in certain medical facilities, including the right to receive adequate and appropriate medical care."  *Hodges v. Wright*, No. 10-

37

CV-531, 2011 WL 5554866, at *8 (N.D.N.Y. Sept. 29, 2011) (citing NYPHL § 2803-c(3)(e)),

*report and recommendation adopted*, 2011 WL 5554880 (N.D.N.Y. Nov. 15, 2011).  "Section

2803-c does not include a private right of action for violation of its guidelines." *Id.*  However,

"[Section] 2801-d authorizes a private right of action by patients of 'residential health care

facilities' for the violation of rights enumerated in [NYPHL] § 2803-c." *Dray v. Staten Island

Univ. Hosp.*, 75 N.Y.S.3d 59, 64–65 (App. Div. 2018).  "'Residential health care facility' means

a nursing home or a facility providing health-related service."  NYPHL § 2801(3).

Here, MNH, the hospital Plaintiff's mother was treated at, does not constitute a

residential health care facility.  *See Dray*, 75 N.Y.S.3d at 64–65 (holding that the hospital is not a

"residential health care facility"); *see also Novick v. S. Nassau Cmtys. Hosp.*, 26 N.Y.S.3d 182,

185 (App. Div. 2016) ("[NYPHL] § 2801-d only applies to nursing homes.").  Accordingly,

Plaintiff does not have a cognizable claim for a violation of his rights under Section 2903-c, and

therefore his claim is dismissed.  *See Hairston v. Liberty Behav. Mgmt. Corp.*, 68 N.Y.S.3d 439,

441 (App. Div. 2018) (holding that detox and rehab facility "[was] not a nursing home or similar

. . . , and thus [was] not governed by the [NYPHL], and not subject to the private right of action

available under [NYPHL] § 2801-d(1)"); *see also Burkhart v. People, Inc.*, 10 N.Y.S.3d 767, 769

(App. Div. 2015) (dismissing plaintiff's action brought based on Section 2801-d because alleged

violations did not occur at a "residential health care facility"); *Hodges*, 2011 WL 5554866, at

*8–9 (recommending that because the plaintiff was not at a "residential health facility," his

NYPHL § 2803-c cause of action be dismissed).

### III.  Conclusion

For the foregoing reasons, all three Motions to Dismiss are granted in full.

Specifically, the following claims are dismissed with prejudice as this is the second time the Court is adjudicating them, and Plaintiff has fixed virtually none of the problems identified by the Court in the Prior Opinion, *see Williams*, 2023 WL 5584345, at *3: (a) with regard to the Rockland Defendants, the Section 1983 false arrest, First Amendment retaliation, and due process claims arising from Plaintiff's August 31, 2020 NYMHL § 9.41(a) seizure, and the Section 1983 false arrest and due process claims arising from Plaintiff's August 24, 2021 arrest; and (b) with regard to the Clarkstown Defendants, all the Section 1983 claims.

In addition, the following claims are dismissed without prejudice: (a) with regard to the Rockland Defendants, the state law false arrest claims against Neuendorf and Leonard, and the harassment, trespass and conspiracy claims against Neuendorf; (b) with regard to the Clarkstown Defendants, the conspiracy claim against Wanamaker; and (c) with regard to the Orangetown Defendants, the IIED, First Amendment retaliation, Fourth Amendment unlawful seizure, due process violations, and violation of NYPHL § 2803-c claims. The dismissal is without prejudice because this is the first adjudication on the merits of this set of Plaintiff's claims. *See Terry v. Inc. Vill. of Patchogue*, 826 F.3d 631, 633 (2d Cir. 2016) (explaining that "district judges should, as a general matter, liberally permit pro se litigants to amend their pleadings" unless "amendment would be futile").

Should Plaintiff choose to file an amended complaint, he must do so within thirty days of this Opinion, addressing the deficiencies identified herein. The amended complaint will replace, not supplement, the complaint currently before the Court. It therefore must contain *all* of the claims and factual allegations Plaintiff wishes the Court to consider, including the identification of individuals and the nature of their involvement. If Plaintiff fails to abide by the thirty-day deadline, the claims that are dismissed could be dismissed with prejudice. In addition, to the

extent that Plaintiff amends the complaint to include defendants who have been dismissed from this Action through this Opinion, and who previously have not been served, Plaintiff must make a separate application to the Court after filing the amended complaint to request an Order of Service for those defendants.

The Clerk of Court is respectfully requested to terminate the pending Motions, (Dkt. Nos. 227, 232, 235), and to mail a copy of this Opinion & Order to Plaintiff's address listed on the docket.  The Court will hold a status conference on March 19, 2024, at 10:30 AM.

SO ORDERED.

Dated:   February 21, 2024
         White Plains, New York

_____
         KENNETH M. KARAS
         United States District Judge