UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X

ARIEL DAN BARKAI,

                            Plaintiff,

               -against-

DETECTIVE ROBERT NEUENDORF, *et al*.,

                            Defendants.
-------------------------------------------------------------X

**ORDER**

21 Civ. 4060 (KMK) (JCM)

        Ariel Dan Barkai ("Plaintiff"), proceeding *pro se*, brought this action pursuant to 42
U.S.C. § 1983 against several members of the Clarkstown Police Department ("CPD"). (Docket
No. 2).  The only remaining defendants are Police Officer Anthony Culianos ("Officer
Culianos") and Police Officer Kyla Caraballo (sued herein as Police Officer Kyla Donegan)
("Officer Donegan"). (Docket Nos. 212, 276).  Plaintiff served a subpoena on non-parties
Rockland County District Attorney Thomas Walsh, II ("DA Walsh"), the Rockland County
District Attorney's Office ("RCDAO"), Detective Robert Neuendorf ("Detective Neuendorf"),
and Missel Infante ("Infante") (collectively, "Non-Parties").  Currently before the Court is the
Non-Parties' letter motion to quash the subpoena ("Motion"). (Docket No. 346).  Plaintiff
opposes the Motion. (Docket No. 348).  The Court heard oral argument on June 20, 2024.  For
the following reasons, the Motion is granted in part and denied in part.

**I.  BACKGROUND**

        The Court assumes familiarity with the facts of the case, and includes only the facts
relevant to resolve the instant Motion.  On August 31, 2020, Plaintiff called the RCDAO to
speak with Detective Neuendorf regarding Plaintiff's EZ Pass. (Docket No. 212 ¶¶ 43-47).
Detective Neuendorf was unavailable, so his secretary, Missel Infante, took a message for him.

- 1 -

(*Id.*).  After leaving a message, Plaintiff hung up and called into a conference call.  (*Id.* ¶ 66).  However, Detective Neuendorf thought that Plaintiff "sounded depressed" and "suicidal," so he called the CPD to request a welfare check on Plaintiff. (*Id.* ¶¶ 51, 58).  Police Officer Donegan was dispatched to Plaintiff's home, and arrived while Plaintiff was on a conference call. (*Id.* ¶¶ 67-71).  Plaintiff told Officer Donegan that he was on a "$130,000,000 call," and refused to let her into his house. (*Id.* ¶ 70).  When Officer Donegan did not leave, Plaintiff asked whether she was "on drugs," and told her to "[g]et off [his] [property]." (*Id.*).  Officer Culianos arrived at Plaintiff's house a short time later. (*Id.* ¶¶ 74-75).  Thereafter, Officer Culianos took Plaintiff into custody pursuant to New York Mental Hygiene Law ("MHL") § 9.41, and transported him to Montefiore Nyack Hospital ("Nyack Hospital"). (*Id.* ¶¶ 78-80).

## II.  PROCEDURAL HISTORY

On February 21, 2024, Judge Karas dismissed several of Plaintiff's claims. (Docket No. 276).  The claims that remain are: (1) a Section 1983 Unlawful Seizure claim against Officer Culianos and Officer Donegan, (Docket No. 212 ¶ 117); (2) a Section 1983 First Amendment Retaliation claim against Officer Culianos, (*id.* ¶ 118); (3) a state law assault claim against Officer Culianos, (*id.* ¶ 124); and (4) a state law wrongful arrest claim against Officer Culianos and Officer Donegan, all relating to the August 31, 2020 incident at Plaintiff's home when he was taken into custody pursuant to MHL § 9.41. (*Id.* ¶ 125).

Plaintiff served a Rule 45 subpoena on May 17, 2024, (Docket No. 329 at 3-4), directing the Non-Parties to respond to certain document requests.  The Non-Parties objected to most of the requests and have now moved to quash the subpoena.

## III.  DISCUSSION

Rule 45 of the Federal Rules of Civil Procedure permits courts to quash or modify subpoenas that subject a person to undue burden. Fed. R. Civ. P. 45(d)(3)(A)(iv).  To determine whether a subpoena imposes undue burden, "the Court must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Anwar v. Fairfield Greenwich Ltd.*, 297 F.R.D. 223, 226 (S.D.N.Y. 2013) (internal quotation marks omitted).  The issuing party "must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Night Hawk Ltd. v. Briarpatch Ltd.*, No. 03 Civ. 1382 (RWS), 2003 WL 23018833, at *8 (S.D.N.Y. Dec. 23, 2003); *Citizens Union v. Attorney General of New York*, 269 F. Supp. 3d 124, 139 ("[T]he relevance standard that applies when seeking discovery from a party also applies to non-parties.").  "Once relevance has been established, the movant bears the burden of demonstrating an undue burden." *Shaw v. Arena*, No. 17 Misc. 0448 (AJN), 2018 WL 324896, at *2 (S.D.N.Y. Jan. 3, 2018) (internal quotation marks omitted).  However, inconvenience, by itself, will not justify an order to quash a subpoena. *See, e.g.*, *Usov v. Lazar*, No. 13 Civ. 818 (RWS), 2014 WL 4354691, at *16 (S.D.N.Y. Sept. 2, 2014).

"A Rule 45 subpoena—like all discovery—must fit within the scope of discovery permitted in a civil case." *Bhatt v. Lalit Patel Physician P.C.*, No. 18-CV-2063-ILG-SJB, 2020 WL 13048694, at *1 (E.D.N.Y. Oct. 19, 2020).  Rule 26(b)(1) of the Federal Rules of Civil Procedure permits the discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely benefit." When Rule 26(b)(1) was amended in 2015, the proportionality factors were restored "to their original place in defining the scope of discovery." Fed. R. Civ. P. 26(b)(1) Advisory Committee's Notes to 2015 Amendments.  Relevance continued "to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *State Farm Mut. Auto. Ins. Co. v. Fayda*, 14 Civ. 9792 (WHP)(JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)).

"However, the amended rule is intended to encourage judges to be more aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information." *Morocho v. Stars Jewelry by A Jeweler Corp.*, No. 23-CV-3836 (VSB)(JLC), 2024 WL 468399, at *2 (S.D.N.Y. Feb. 7, 2024) (citations and internal quotations omitted).  "The burden of demonstrating relevance remains on the party seeking discovery, but the newly revised rule does not place on [that] party . . . the burden of addressing all proportionality considerations." *Id.* (citation omitted).

## A.  Plaintiff's First Request

Plaintiff seeks files related to "the two counts of Harassment in the Second Degree prosecuted by RCDAO against" Plaintiff. (Docket No. 329 at 3).  Plaintiff argues that, on the day of his seizure, Detective Neuendorf informed Dispatcher Monihan that Plaintiff had a history of "caus[ing] a stir" at Nyack Hospital, and Dispatcher Monihan informed Officer Culianos that Plaintiff "made threats against [Nyack Hospital]" in the past. (Docket No. 348 at 4).  Plaintiff claims that he is entitled to "complain to a hospital without fear of retaliation," and that Detective Neuendorf lied when he said that Plaintiff caused a stir, and he seeks to prove it with "documents related to the RCDAO's prosecution of the 2020 Harassment Charges against

Plaintiff." (*Id.*).  The Non-Parties maintain that "all of the claims arising from the 2020

Harassment Charges have been dismissed, and the four remaining claims in the action arise only

from the August 31, 2020 Seizure," thus the documents requested are irrelevant. (Docket No.

346 at 3).  Plaintiff disagrees, arguing that "all the facts related to the [2020 Harassment

Charges] wrongfully brought against [him] are relevant and need to be challenged . . . regardless

of this Court's ruling as to prior claims that may have been dismissed," because it will show that

Plaintiff acted "within the confines of the law" by "merely express[ing] his [] right to complain

to a hospital without fear of retaliation." (Docket No. 348 at 4).

   As an initial matter, Plaintiff's request is overbroad.  Plaintiff requests "all files, internal

memos, notes, messages, or reports" related to the 2020 Harassment Charges, and seeks to

"challenge" the "totality of the file and any documents relating to it." (Docket No. 329 at 3).

However, "[c]ourts have often found that such blanket requests" for "'all documents' . . . [are]

overbroad and impermissible." *United States Sec. & Exch. Comm'n v. Ahmed*, No. 3:15CV675

(JBA), 2018 WL 1541902, at *2 (D. Conn. Mar. 29, 2018).  Such "overbreadth is, on its own, a

basis to deny" Plaintiff's request. *Id.*

   Moreover, Plaintiff's request is not relevant to his remaining claims.  "[T]he law is settled

that as a general matter the First Amendment prohibits government officials from subjecting an

individual to retaliatory actions . . . for speaking out." *Vaher v. Town of Orangetown, N.Y.*, 133

F. Supp. 3d 574, 596 (S.D.N.Y. 2015) (quoting *Hartman v. Moore*, 547 U.S. 250, 256 (2006)).

"To state a First Amendment retaliation claim, a plaintiff must establish that: (1) his speech or

conduct was protected by the First Amendment; (2) the defendant took an adverse action against

him; and (3) there was a causal connection between this adverse action and the protected

speech." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011).

Plaintiff has failed to show any causal connection between the 2020 Harassment Charges and his remaining claims. At the outset, Plaintiff argues that he is entitled "to complain to a hospital without fear of retaliation," (Docket No. 348 at 4), but Plaintiff's First Amendment retaliation claim is against Officer Culianos, not Nyack Hospital. (Docket No. 212 ¶ 118). Moreover, Plaintiff's retaliation claim against Officer Culianos stems from Officer Culianos "unlawfully seizing [Plaintiff] because he 'did not like the way [Plaintiff] was speaking to his partner.'" (*Id.*). In fact, Plaintiff does not argue that Officer Culianos was aware of the 2020 Harassment Charges, nor that he was arrested because of anything in those records. Indeed, while Plaintiff argues that "all the facts related to the charges wrongfully brought against [him] are relevant and need to be challenged," (*id.*), relevance under the Federal Rules of Civil Procedure is not so broad. *See Oppenheimer Fund, Inc.*, 437 U.S. at 351. Plaintiff has failed to show how the records relating to the 2020 Harassment Charges are "reasonably calculated to lead to the discovery of admissible evidence" regarding Plaintiff's retaliation claim against Officer Culianos. *Alberty v. Hunter*, 343 F.R.D. 1, 5 (D. Conn. 2022) (internal quotations and citation omitted). Thus, the Court finds these records are not relevant to the remaining claims.

Accordingly, the Motion to quash Plaintiff's first request is granted.

## B. Plaintiff's Second Request

Plaintiff's second request seeks all files "related to the telephone call between [Plaintiff] and [Detective] Neuendorf on August 20th, 2020." (Docket No. 329 at 3). Plaintiff seeks this information to show "a reasonable fact finder [] that N[e]uendorf was lying." (Docket No. 348 at 4). The Non-Parties argue that this request is irrelevant because it has no bearing on Plaintiff's "state of mind" on August 31, 2020, which prompted Detective Neuendorf to request a welfare check on Plaintiff. (Docket No. 346 at 4).

- 6 -

Here, Plaintiff argues that he is entitled to the "recorded call with [himself and] N[e]uendorf on August 20, 2020" because it "w[ill] lead a reasonable fact finder to conclude that *N[e]uendorf* was lying." (Docket No. 348 at 4) (emphasis added).  However, Plaintiff's claims against Detective Neuendorf have been dismissed. *See Raghavendra v. Fenn*, No. 16-CV-4118 (JMA)(SIL), 2020 WL 8409293, at *1 (E.D.N.Y. Nov. 30, 2020) (enjoining a *pro se* plaintiff after he "continue[d] to try to litigate claims that have already been dismissed by this Court").  Thus, discovery relating to a statement made by a non-party more than one week prior to the underlying incident, that is wholly unrelated to Plaintiff's remaining claims, is not relevant.

Moreover, Judge Karas has held in this case that "the crucial probable cause inquiry is based upon whether the facts known *by the arresting officer at the time of arrest* objectively provided probable cause to arrest." *Barkai v. Neuendorf*, No. 21-CV-4060 (KMK), 2023 WL 2691712, at *20 (S.D.N.Y. Mar. 29, 2023) (emphasis in original) (internal quotations and citation omitted).  First, as Judge Karas noted, Detective Neuendorf was not an arresting officer. *See id.*; *see also Smith v. City of New York*, 388 F. Supp. 2d 179, 184 (S.D.N.Y. 2005) (holding that probable cause focuses on "the arresting officer").  Second, the call at issue occurred on August 20, 2020, which is eleven days before "the time of [Plaintiff's] arrest" that Judge Karas described as "the crucial probable cause inquiry." *See Barkai*, 2023 WL 2691712, at *20.  Thus, the August 20, 2020 phone call is unrelated to Plaintiff's remaining claims.

Furthermore, Plaintiff's call with Detective Neuendorf does not relate to whether Officers Culianos or Donegan had probable cause on August 31, 2020.  The Second Circuit has "observe[d] that the law permitting one law enforcement officer to rely on the report of

another in applying for a warrant nowhere requires direct consultation to ensure that the officer reviewing the report ascribes no more weight to the described facts than the reporter intended." *Walczyk v. Rio*, 496 F.3d 139, 160 (2d Cir. 2007). Here, Judge Karas noted that Detective Neuendorf stated that Plaintiff "made suicidal threats to the DA" and, thus, requested a welfare check on Plaintiff. *See* 2023 WL 2691712, at *20. Even if Detective Neuendorf was incorrect in his statement, Officer Culianos and Officer Donegan were entitled to "rel[y] on mistaken information, so long as it was reasonable for [them] to rely on it." *Manganiello v. City of New York*, 612 F.3d 149, 161 (2d Cir. 2010). Only if Officer Culianos and Officer Donegan "fail[ed] to make a further inquiry when a reasonable person would have done so," may their mistaken belief support a finding that they "lack[ed] probable cause." *Id.*

Plaintiff has explained that he is requesting these documents to determine whether *Detective Neuendorf* is lying—not whether Officer Culianos or Officer Donegan unreasonably relied on this information, or failed to conduct a further inquiry into this information when a reasonable officer would have done so. *See id.* In addition, Plaintiff does not argue that Officer Culianos or Officer Donegan had any knowledge of the August 20, 2020 conversation between Plaintiff and Detective Neuendorf, nor based their ultimate decision to arrest Plaintiff on it. As a result, Plaintiff has failed to show that his conversation with Detective Neuendorf on August 20, 2020 is relevant to his claims against Officer Culianos and Officer Donegan.

Accordingly, the Motion to quash Plaintiff's second request is granted.

## C. Plaintiff's Third Request

Plaintiff's third request seeks all files "related to the telephone call between [Plaintiff] [and] Mis[s]el Infante on August 31st, 2020." (Docket No. 329 at 3).

- 8 -

During oral argument held on June 20, 2024, the Non-Parties stated that they will produce the following discovery: (1) the handwritten notes taken by Missel Infante during her phone call with Plaintiff on August 31, 2020; (2) the handwritten notes, taken by an unknown employee, relating to this phone call; and (3) any entries into the RCDAO's computer system relating to this phone call. The Non-Parties further represented that there is no audio recording of the conversation between Missel Infante and Plaintiff on August 31, 2020. Finally, the Court confirmed that Plaintiff is already in possession of the CPD dispatch recording between Dispatcher Monihan and Detective Neuendorf, as well as the radio run recordings between CPD dispatch and Officers Culianos and Donegan prior to and during the August 31, 2020 MHL Seizure. Thus, it appears Plaintiff is either currently in possession of, or will shortly receive, documents responsive to this request. Accordingly, Plaintiff's third request is denied as moot.

**D.  Plaintiff's Fourth Request**

Plaintiff's fourth request seeks surveillance footage from Plaintiff's visit to the RCDAO on June 20, 2020, "when he came to . . . speak . . . about his conversation with Donald Butterworth and was removed by Court security." (Docket No. 329 at 4). Plaintiff wants this information to "indisputably highlight at least one of N[e]uendorf's many lies and . . . call into question the validity of the welfare check request itself," to show that "Defendants" lacked probable cause for his arrest. (Docket No. 348 at 6). The Non-Parties argue that this footage is irrelevant to "Plaintiff's state of mind" on August 31, 2020. (Docket No. 346 at 5).

The Court agrees. Plaintiff cannot explain how this request is tied to any of his four remaining claims. Instead, he argues that it will show Detective Neuendorf is lying, but Detective Neuendorf is no longer a party to this action. To the extent Plaintiff argues that Detective Neuendorf's alleged lie is relevant to his claims, for reasons set forth *supra* Sections III.A and III.B, Plaintiff's argument is without merit.

Accordingly, the Motion to quash Plaintiff's fourth request is granted.

### E.  Plaintiff's Sixth Request

Plaintiff's sixth request seeks "all documents between the [RCDAO] and the [CPD] regarding the incident." (Docket No. 329 at 4).  In opposition, the Non-Parties represent that Plaintiff clarified that he is requesting communications between RCDAO and CPD regarding the CPD's assignment of Sergeant Bax as a "contact point" for Plaintiff. (Docket No. 346 at 5).  The Non-Parties oppose this narrowed request, since Sergeant Bax was not involved in the August 31, 2020 incident. (*Id.*).  Sergeant Bax did not start interacting with Plaintiff until after the August 31, 2020 incident, nor did he investigate the incident, or have personal knowledge of what occurred on August 31, 2020. (Docket No. 367-1).

Accordingly, the Motion to quash Plaintiff's sixth request is granted.

### F.  Plaintiff's Eighth Request

Plaintiff's eighth request seeks all files "in the RCDAO's possession related to any threats of self-harm made by Plaintiff, or any threats of harm to anyone else made by Plaintiff" from March 1, 2020 to August 31, 2020. (Docket No. 346 at 5); (*see also* Docket No. 329 at 4). The Non-Parties argue that this request is irrelevant because the knowledge the Non-Parties had of Plaintiff's threats are irrelevant to Plaintiff's seizure by Officer Culianos and Officer Donegan. (Docket No. 346 at 5).  At oral argument, Defendants claimed that any records responsive to this request may be relevant.  Although the Non-Parties represented that they are unaware of any responsive documents, they agreed to conduct a search for them, and produce any responsive documents.

Accordingly, Plaintiff's eighth request is moot since the Non-Parties will produce any responsive documents found.

**IV.  CONCLUSION**

For the foregoing reasons, the Motion to Quash the First, Second, Fourth, and Sixth

Request is granted.  The Non-Parties are directed to provide responses to the Third and Eighth

Request as directed herein by July 9, 2024.

The Clerk of Court is directed to mail a copy of this Order to the *pro se* Plaintiff.

Dated: June 26, 2024
　　　 White Plains, New York

**SO ORDERED:**


JUDITH C. McCARTHY
United States Magistrate Judge